# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| FUN VALLEY PARK INC. | * | CASE NO. 10-08563 (BKT) |
| | * | |
| DEBTOR | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DISCLOSURE STATEMENT
## DATED: May 24, 2011

TO THE HONORABLE COURT
TO CREDITORS
TO OTHER PARTIES IN INTEREST

 The debtor herein, as debtor in possession through the undersigned attorney, submits its disclosure statement as of May 16, 2011 together with the proposed plan of reorganization.

 Respectfully submitted in San Juan, P.R. this _25_ th day of May of 2011.


*/S/Wigberto Lugo Mender*
**WIGBERTO LUGO MENDER**
**ATTORNEY FOR DEBTOR**
USDCPR 212304
Centro Internacional de Mercadeo
Road 165 Torre 1 Suite 501.
Guaynabo, PR 00968
Tel. 787.707.0404
Fax 787.708.0412
wlugo@lugomender.com

# TABLE OF CONTENTS

**1.  INTRODUCTION AND BANKRUPTCY PROVISIONS**

1.1  BANKRUPTCY CODE PROVISIONS FOR POST PETITION DISCLOSURE

1.2  DISCLAIMER

1.3  VOTING REQUIREMENTS

**2.  DEBTOR'S HISTORY, OPERATIONS AND STRUCTURE**

2.1  THE DEBTORS AND ITS OPERATIONS

2.2  CORPORATE OFFICERS AND MANAGEMENT TEAM

2.3  DATE THE PETITION WAS FILED

2.4  BANKRUPTCY PROCEEDINGS

**3.  DEBTOR'S FINANCIAL INFORMATION**

3.1  GENERAL FINANCIAL INFORMATION

3.2  ASSETS AND LIABILITIES AS OF PETITION DATE

3.3  PENDING LITIGATION

3.4  LIQUIDATION ANALYSIS

**4.  SUMMARY OF THE PLAN OF REORGANIZATION**

4.1  DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

4.2  TREATMENT FOR CLASSES OF CLAIMS AND INTEREST

4.3  PAYMENT OF UNSECURED PRIORITY GOVERNMENT CLAIMS

UNDER 11 U.S.C. SECTION 507(a)(8)

4.4    IMPAIRMENT OF EXISTING CLAIMS AND INTERESTS

4.5    DISCHARGE OF CLAIMS

4.6    OBJECTIONS TO CLAIMS

**5.    OTHER MISCELLANEOUS PROVISIONS**

5.1    EXECUTORY CONTRACTS

5.2    MEANS OF EXECUTION OF THE PLAN And FUTURE

MANAGEMENT OF DEBTOR

5.3    PROVISIONS FOR THE MODIFICATION OF THE PLAN

5.4    CLOSING OF THE CASE

5.5    RETENTION OF JURISDICTION

## 1.    INTRODUCTION AND BANKRUPTCY PROVISIONS

*1.1 BANKRUPTCY CODE PROVISIONS FOR POST PETITION DISCLOSURE:*

Section 1125 of the Bankruptcy Code requires that debtor make post petition disclosure

in the form of a disclosure statement which provides "adequate information" to its creditors

before debtor or a party acting on its behalf may solicit acceptances of a Chapter 11 plan of

reorganization. Creditors are urged to consult with their own attorneys, or with each other, and to

review all of the pleadings and other documents on file with the U.S. Bankruptcy Court in order

to fully understand the disclosures made herein, regarding Debtor's proposed Plan of

Reorganization (hereafter referred to as the Plan) and any other pertinent matters in this case.  A

copy of the Plan is attached to this Disclosure Statement.

*1.2    DISCLAIMER:*

Creditors are advised that the financial information contained in this Disclosure

Statement has not been the object of an audit and is not certified by independent public

accountants, except where expressly stated otherwise.  Debtor does not warrant or represent that

the information contained herein is without inaccuracy, notwithstanding the efforts to disclose all

matters with careful attention to accuracy and completeness.

*1.3    VOTING REQUIREMENTS:*

In order for the Plan to be confirmed by the Bankruptcy Court, the Bankruptcy Code

requires that the Plan be approved by all classes of creditors and interest holders or that the Court

find that the Plan is "fair and equitable" as to any dissenting class.  As provided by 11 U.S.C.

1124, a class of claims or interests is impaired under a plan unless, with respect to each claim or

interest of such a class, the plan:

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) Notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest, to demand or receive accelerated payment of such claim or interest after the occurrence of a default.

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) Does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Ordinarily, but not in all circumstances, a plan may not be confirmed unless at least one impaired class, assuming there is at least one impaired class, accepts the plan. A class has accepted the plan if such a plan has been accepted by creditors, other than those under 11 U.S.C. 1126 (e), that hold at least two-thirds (2/3) in amount and more than one-half (½) in number of the allowed claims of such class held by creditors, that have accepted or rejected such plan.

Creditors may vote for the acceptance or rejection of the plan.

Each creditor is urged to consult with its own attorney and obtain advice on the proposals and dispositions of this Disclosure Statement and Plan of Reorganization. The statements contained herein are only a brief summary of the confirmation process and should not be relied upon in making your determination as to whether to vote in favor of or against the Plan. Creditors should consult their attorneys before making a determination to vote for or against the Plan.

Creditors are expressly referred to the debtor's schedules of assets and liabilities and the statement of financial affairs and all other documents duly filed with the Bankruptcy Court. This Plan is predicated upon certain assumptions that may not materialize, and you are urged to give consideration to such assumptions.

No representation concerning Debtor, or as to the actual or realizable value of its property is authorized by the debtor other than as set forth in this Disclosure Statement. Any amendments or clarifications to this Disclosure Statement or the Plan shall be in writing and filed with the Court.

## 2. DEBTOR'S HISTORY, OPERATIONS AND STRUCTURE

*2.1 THE DEBTOR AND ITS OPERATIONS:*

*General Background:*

Fun Valley Park Inc., (hereinafter referred to as "Fun Valley" or "Debtor") is a corporation organized under the laws of the Commonwealth of Puerto Rico on February 22, 2000. Fun Valley

operates a recreational and amusement park located at Road Number 10, Tanamá Ward, Arecibo Puerto Rico. The park continues the customary operating hours of the business.

The stockholder-owners of the debtor are Mr. Rafael Aviles-Cordero and his wife, Mrs. Aurea E. Jiménez Cubero. Their sons, Kevin Aviles-Jimenez, Hugo J. Aviles Jiménez and Abdiel Aviles Jimenez, works at Fun Valley as an assistant in the business's operations and affairs.

Debtor is the owner of the real estate property comprised of a commercial building and 22 acres of land located at Road Number 10, Tanamá Ward, Arecibo, Puerto Rico. The company's administrative offices and the amusement park are located on the premises.

This property is encumbered by registered liens on behalf of Banco de Desarollo Económico para Puerto Rico, and US Small Business.

*Reasons for Filing de Bankruptcy Petitions:*

Debtor's reasons for filing the captioned petition are mostly related to cash flow shortages and arrears on payroll taxes caused by delayed customer payments. In addition, during the past years, certain contracts with the Department of Education were cancelled and Debtor had to write-off receivables.

These cash flow shortages in operations resulted in arrears with the Internal Revenue Service (IRS) and with other taxing agencies for employer taxes. Debtor attempted to comply with these agencies with direct payment plans, but the cash demands were beyond the Debtor's financial ability. Hence, a week before the filing of this bankruptcy petition, the IRS levied the

company's bank accounts. Debtor was unable to comply with the immediate operating expenses. For this reason, debtor filed the captioned case pursuing to restructure finances and resources in furtherance of providing a feasible payment alternative to creditors.

In addition to the limited resources to cover operating expenses, the company had to face adverse judgments and potential foreclosure actions resulting from the complaints filed by several employees and creditors.

### 2.2 *CORPORATE OFFICERS AND MANAGEMENT TEAM:*

The company's Board of Directors is composed as follows:

President: Mr. Rafael Aviles-Cordero, Esq.

Secretary and Treasurer: Mrs. Aurea E. Jiménez-Cubero

Mr. Rafael Aviles-Cordero and his wife Mrs. Aurea E. Jiménez-Cubero, have been married since January 1976. The development and operating success of the business derives from years of experience and hard work in this industry.

Mr. Rafael Aviles Cordero - Holds a Bachelor Degree in Political Science from the Catholic University of Arecibo, PR; Juris Doctor from Law School of Catholic University in Ponce, PR and over ten (10) years of experience in the administration and operation of the amusement park.

Mrs. Aurea E. Jiménez-Cubero - Holds a Bachelors Degree in Education from the University of Puerto Rico and ten (10) years of experience in administration and operation of the amusement park.

Day to day management of the company is headed by Mr. Rafael Aviles Cordero. In addition, his wife, Mrs. Aurea E. Jiménez Cubero, is the manager. Furthermore, their sons, Mr. Kevin Aviles-Jiménez, works at Fun Valley as an assistant in the business' operations of the Park; Mr. Hugo J. Aviles-Jiménez is the park's supervisor; and Mr. Abdiel Avilez-Jiménez working with the marketing and advertising of the park.

## 2.3    DATE THE PETITION WAS FILED

The bankruptcy petition of Fun Valley was filed on September 16, 2010, under the provisions of Chapter 11 of the Bankruptcy Code. Since that date, debtor remain operating as Debtor in Possession.

## 2.4    BANKRUPTCY PROCEEDINGS

*Compliance with Operating Guidelines and DIP Requirements*:

Upon the filing of this bankruptcy petition, Fun Valley has taken all possible measures necessary to reorganize the company. Debtor is in compliance with the Operating Guidelines as follows:

a)    Monthly Operating Reports have been completed and filed with the Court up to March 2011.

b)    Property and public liability insurance has been maintained

c)    Quarterly fees required by the U.S. Trustee are up to date.

d)    Tax returns and declarations have been filed as these become due.

*Employment of Professionals*:

On October 5, 2010, Debtor filed their applications to employ attorney Wigberto Lugo

Mender and the firm of Lugo Mender & Co., who will serve as attorney for the debtor in

possession. On November 2, 2010, the Court entered an Order approving this employment.

*Operational Adjustments Implemented*:

Operational reports are being analyzed in order to identify business alternatives and

marketing strengths that could maximize debtors' returns in its operations.

Within the operational measures implemented to reorganize the business are the

following:

a)	Debtor has drastically reduced, by more than 20 %, the number of employees

working in the company. In addition, the overall management of the company has

become more effective with the direct participation of its officers.

b)	Debtor has reduced company's overhead expenses, such as telephone, advertising

and other operating expenses. Compensation and benefits to management have also been

reduced.

c)	The individual debtor's compensation has also been reduced significantly in an

effort to increase operating resources and cash flows to cover operating expenses.

Since the date of filing, Debtor has concentrated all efforts in identifying and developing

means to fund a Reorganization Plan so as to provide for payments of obligations to all creditors.

Management has determined that the only alternative to comply with the creditors in this case is

to continue the business as an on-going operation and thus generate the necessary resources for

the payment of a reorganization plan.

## 3.    DEBTOR'S FINANCIAL INFORMATION

### 3.1    GENERAL FINANCIAL INFORMATION:

For purposes of filing this petition, Debtor presented the required schedules. On November 10, 2010, the corporate debtor filed the Amended Schedule H to include more information about the co-debtor of the case and on November 16, 2010 filed the Amended Statement of Financial Affairs.

The information provided in the schedules filed and the statements of financial affairs show Debtor's financial position as of the date of the filing of the petition. Business' income and expenses are detailed in the accompanying income tax returns. Also, monthly operating reports available in the Bankruptcy Court file show debtor's finances and results of operations for the period after the date of the filing of the petition.

Monthly operating reports available in the Bankruptcy Court file show that debtor's finances have remained constant and that the possibility of a reorganization of its finances is viable. A summary of all monthly operating reports has been prepared and enclosed herein as **Exhibit 1**.

Furthermore, the corporate debtor includes as **Exhibit 2** in the Disclosure Statement, a copy of the Corporate Tax Returns for the years ended on December 31, 2009 and 2010 and the unaudited financial statement for the three months ended March 31, 2011.

### 3.2    ASSETS AND LIABILITIES AS OF PETITION DATE:

*Schedules and Statement of Financial Affairs*

The Debtors filed its Schedule of Assets and Liabilities and Statement of Financial

11

Affairs (collectively, the "Schedules and Statements") with the Bankruptcy Court on September 16, 2010 (Docket # 1), and filed the Amended Schedule H on November 10, 2010 and the Amended Statement of Financial Affairs on November 16, 2010 (Dockets #19 and 22). Among other things, the Schedules and Statements set forth, include the Claims of known creditors against the Debtor as of the Petition Date, based upon the Debtor's books and records.

Moreover, a detail of all assets is provided in the liquidation analysis section, with updated values as detailed herein as **Exhibit 3**.

*Claims Bar date and Proof of Claims*

On September 20, 2010, the Bankruptcy Court entered an order setting bar date for general unsecured claims on January 23, 2011 and for governmental units (as defined by section 101 (27) of the Bankruptcy Code) as March 19, 2011 (the "Bar Dates"). To date, the Debtor has received 18 proofs of claim forms asserting approximately $2.9 millions in claims. The Debtor has begun the process of reviewing the asserted Claims, as well as objecting those he believes should be disallowed in whole or part of.

The Debtor's estimates of Allowed Claims are identified herein. See Schedule of Payments under the Plan of Reorganization enclosed as **Exhibit 4.**

### 3.3    *PENDING LITIGATION:*

*Progressive Finance vs Fun Valley Park Inc.* – Civil Case No. CDC2003-1049, at the Commonwealth of Puerto Rico, First Instance Court, Subsection of Arecibo. This proceeding is in regards to a "collection of money" action filed by Progressive Finance before the date of the filing of

the instant bankruptcy petition. A final judgment was entered on December 4, 2010. The amount claimed will be considered as an unsecured claim.

*Manuel López Cortes vs Fun Valley Park Inc.et al* – Civil Case No. CDP2006-0149, at the Commonwealth of Puerto Rico, First Instance Court, Subsection of Arecibo. This proceeding is in regards to "breach and damages" action filed by Manuel López Cortes before the date of the filing of the instant bankruptcy petition. A final judgment was entered on 2009. The amount claimed will be considered as an unsecured claim

*Department of Labor & Manuel Hndz vs Fun Valley Park Inc.* – Civil Case No. NAL29082, at the Commonwealth of Puerto Rico, First Instance Court, Subsection of Arecibo. This proceeding was filed by the Department of Labor in representation of Mr. Manuel Hernandez Coriano before the date of the filing of the instant bankruptcy petition. This litigation has been stayed upon the filing of this case. The amount claimed will be considered as an unsecured claim.

*Luis Segarra Martinez vs Fun Valley Park Inc.* – Civil Case No. CDP2008-0008, at the Commonwealth of Puerto Rico, First Instance Court, Subsection of Arecibo. This proceeding refers to a "breach & damages" action filed by Luis Segarra Martinez before the date of the filing of the instant bankruptcy petition. This litigation has been stayed upon the filing of this case. The amount claimed will be considered as an unsecured claim.

*Brayant Rivera Rivera & Department of Labor vs Fun Valley Park Inc.* – Civil Case No. OM09-827, at the Commonwealth of Puerto Rico, Department of Labor, Oficina de Mediación y Adjudicación. This proceeding was filed by Brayant Rivera Rivera in relation to pending vacations and salaries before the date of the filing of the instant bankruptcy petition. This litigation has been

13

stayed upon the filing of this case. The amount claimed will be considered as an unsecured claim.

### 3.4    LIQUIDATION ANALYSIS:

One requirement for the confirmation of a plan under Chapter 11 of the U.S. Code is that, with respect to each impaired class of claims, each claim holder of such class has accepted the plan or will receive or retain under the plan, on account of such allowed claim, a value as of the effective date of the plan, that is not less than the amount such claim holders would receive or retain if the debtors were liquidated under Chapter 7 of the Code on such date.  In order to provide the value as of the effective date of the plan under a Chapter 7 scenario, debtor includes a detailed liquidation analysis.

For purposes of determining a liquidation value, debtor has estimated as realizable in a chapter 7 scenario from 20% to 100 % of the actual or scheduled value for existing personal property.  The estimated realizable values have been deducted for purposes of the liquidation analysis using the experience of liquidation of assets under Chapter 7 bankruptcy cases.

For the estimated realizable value, estimated administrative expenses have been reduced to determine the estimated amount for unsecured creditors in a liquidation.   A detailed liquidation analysis, with the bases for preparation thereof, is enclosed herein as **Exhibit 3**.

The liquidation analysis prepared for this case shows that, upon realization of estate assets and payment of liens and expenses, net available assets in a liquidation proceeding may approximate $0.00.

## 4.    SUMMARY OF THE PLAN OF REORGANIZATION

## 4.1    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Plan divides the creditors into FOUR (4) classes.  The classes of creditors are as follows:

**CLASS 1** – ADMINISTRATIVE EXPENSES

**Class 1 – General Administrative Expenses**:  Shall consist of Allowed Administrative Expense Claims, as provided under sections 507 (a)(1) and 507(b) of the Bankruptcy Code including, without limitation, costs and expenses allowed under section 503 (b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Debtors' Estate and Professional Fee Claims and any fees or charges assessed against the Debtors' Estate under 28 U.S.C.§ 1930. This class includes, but is not limited to, the United States Trustee's quarterly fees; fees and expenses of Debtors' counsel, special counsel, external auditor and other professionals as may be allowed by the Bankruptcy Court upon application therefore and after notice and hearing according to the Bankruptcy Code and Rules and; any unpaid taxes or fees accrued since petition date as well as court costs accrued since the petition date.

Debtor estimates the liability in this Class 1 in the amount of $29,795.

**CLASS 2 -**    SECURED CREDITORS - DEBTS RESTRUCTURED

This class accounts for secured creditors with interest in property necessary for the reorganization process and/or to be retained by the reorganized debtor.  For presentation purposes and clarity, claimants under this class have been named under sub classes but they are still intended to vote under a single class.

***Sub-Class 2.1 BANCO DESAROLLO DE PR***

Banco de Desarollo para Puerto Rico filed proof of claim number 7 in the total amount of $1,441,902. This amount is in regards to certain commercial loans granted to Fun Valley Park Inc. The amount due under this loan is secured with a first rank mortgage note and pledge agreement encumbering debtor's commercial property located at Road Number 10, Tanamá Ward, Arecibo Puerto Rico.

### Sub-Class 2.2  US SMALL BUSINESS

Debtor scheduled the amount of $720,000 in favor of US Small Business. This amount is in regards to a commercial loan secured by debtor's commercial property located at Road Number 10, Tanamá Ward, Arecibo Puerto Rico.

## CLASS 3 –  GENERAL UNSECURED CREDITORS

General unsecured creditors considering those listed by the Debtor, those who filed a proof of claim and those secured creditors, who after Debtor's efforts have agreed to be considered part of their claim as unsecured, are included in this class. The debt under this class has been estimated by debtor in the amount of $543,133.

## CLASS 4 – EQUITY SECURITY INTEREST HOLDERS

Equity security and interest holders are the current owners of the common stocks of the Debtor. The current stockholders of the corporation are Mr. Rafael Aviles Cordero and Mrs. Aurea E. Jiménez Cubero, the founders of the business, which own 100% of the voting common stock. Currently, these stockholders are the principal officers and directors of the corporation and have been actively engaged in Debtor's reorganization process.

## 4.2    *TREATMENT FOR CLASSES OF CLAIMS AND INTEREST:*

**CLASS 1** – ADMINISTRATIVE EXPENSES

Allowed Administrative Expense Claims, as provided under Section 503 of the Code,

shall be paid full in cash as soon as practicable or agreed with the creditor, no later than (a) the

Effective Date or (b) the date any such claim becomes an allowed Administrative Claim.  This

class is not impaired.

**CLASS 2  –  SECURED CREDITOR DEBTS RESTRUCTURED**

In general terms, all secured creditors under this class shall retain unaltered their legal

equitable and contractual rights over the collateral and extent of security as detailed in the

respective mortgage loans, but payment and maturity terms will be modified and restructured

upon the confirmation of the subject plan of reorganization.  Detailed terms for each creditor are

as follows.

### *Sub-Class 2.1 BANCO DESAROLLO PARA PR*

The amounts due under this class will be paid in full but on modified terms.  In relation to

claim 7 in the amount of $1,441,902, on the effective date of the plan, the outstanding secured debt

of this creditor will be restructured into an installment payment plan calling for consecutive monthly

payments to pay the secured amount determined herein full in cash at contract interest rate of 4.25%,

payable in monthly installments of no more than $7,093.29 during a period of 60 months, starting on

June 1, 2012. Interest and amortization terms will be renegotiated after the 61 installments have been

provided, asking for the same monthly payments determined herein.

Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit 4** and the loan calculator table enclosed herein as **Exhibit 5**.

This class is impaired.

### *Sub-Class 2.2 US SMALL BUSINESS*

The amounts due under this class will be paid in full but on modified terms. In relation to the scheduled amount due of $720,000, on the effective date of the plan, the outstanding secured debt of this creditor will be restructured into a monthly installment payment plan in order to pay the secured amount determined herein full in cash at contract interest rate of 4.25%. Monthly payments will be made in the amount of no more than $3,541.97 during a period of 60 months, starting on June 1, 2012. Interest and amortization terms will be renegotiated after the 61 installments have been provided, asking for the same monthly payments determined herein.

Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit 4** and the loan calculator table enclosed herein as **Exhibit 6**.

This class is impaired.

## CLASS 3 -    GENERAL UNSECURED CREDITORS

On the consummation date, each Class 3 claimant shall receive from the debtor a lump sum payment representing a proportional share of their claim on the aggregate dividend to be provided to this class. The aggregate dividend to this class will be fixed in amount of $20,000 with payments to be distributed pro-rata among the outstanding and allowed claims for each creditor. This payment will be issued 12 months after the effective date of the plan.

Each check shall be payable within the 12 months after the Effective Date as per the Schedule Payments under the Plan of Reorganization that is detailed herein as **Exhibit 4.**

This class is impaired.

## CLASS 4 – EQUITY SECURITY INTEREST HOLDERS

Equity Security Interest Holders will not receive any cash dividend throughout this plan. Moreover, any payment on their behalf is subordinated to full payment of the allowed claim as detailed in this plan.

Additionally, the equity security holders will retain their interest in the Reorganized Debtor by receiving a distribution of common stock from the Reorganized Company equivalent to their current participation with the corporate debtor. Furthermore, they will also assist the debtor in its reorganization with their experience, knowledge and personal work.

Even though this class is impaired, they will not vote for the plan.

*4.3 PAYMENT OF UNSECURED PRIORITY GOVERNMENT CLAIMS UNDER 11 U.S.C. SECTION 507(a)(8):*

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, will be paid as stated below. Debtor estimates the debt as follows:

a. Internal Revenue Service: Secured portion of $494,981 and priority portion of $38,898 as per Amended Proof of Claim #2

b. CRIM: $57,567 as per Proof of Claim #6.

      c.  State Insurance Fund Corporation: $10,114 as per Proof of Claim #14.

      d.  PR Department of Treasury: Secured portion of $203,737 and priority portion of $60,996 as per Proof of Claim #16.

      e.  PR Department of Labor: Unemployment portion of $35,152 as per Proof of Claim #17.

      f.  PR Department of Labor: Unemployment portion of $4,422 as per Proof of Claim #18

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, shall be paid in monthly installments commencing on the effective date and during a period not exceeding five years after the date of the assessment of each such claim. Each claim is to be evidenced by a promissory note for the full amount thereof, with bearing interest at the statutory rate, dated as of the Effective Date, the value of the future payments must be equal to its allowed amount.

In relation to the claim of IRS, if Debtor fails to: make any deposits of any current employment tax liability; make any payment of any tax to IRS within 10 days of the due date of such deposits or payment; file required federal tax return by the due date; or make any payments due to the IRS under this plan, the IRS may declare that the Debtor is in default, provided that a notice is given in writing to the Debtor to the address of record. If the IRS declares Debtor in default, then Debtor must cure that default within 30 days. If the total amount in default is not cured, the entire imposed liability to be paid under the plan, together with any unpaid current liability, shall become due and payable immediately upon written demand.

The IRS, notwithstanding any stay which may be in effect, may then collect any unpaid

liabilities through the administrative collection provision of the IRS.

See Schedule Payments under the Plan of Reorganization, **Exhibit 4.**

*4.4    IMPAIRMENT OF EXISTING CLAIMS AND INTERESTS:*

As provided by 11 U.S.C. 1124, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such a class, the plan:

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default.

> a.   cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
>
> b.   reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> c.   compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
>
> d.   does not otherwise, alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

*4.5    DISCHARGE OF CLAIMS:*

Except as otherwise provided for in this Plan or in the Order of Confirmation, the rights granted by the Plan and the payments and distributions to be made there under shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and claims of any kind, nature or description whatsoever against the Debtor. On the Consummation Date, all existing claims shall be deemed to be exchanged, satisfied, discharged and released in full; and all holders of claims shall be precluded from asserting any other or future claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date, whether or not such holder filed a proof of claim.

The order of confirmation of this Plan shall constitute an injunction against the pursuit of any claim or Equity Interest, whether or not a proof of claim or proof of interest based on any such debt, liability, or interest is filed or deemed filed, under 11 U.S.C. 501, such claim is allowed under 11 U.S.C. 502 or the holder of such claim has accepted this Plan in the manner set forth herein.

*4.6    OBJECTIONS TO CLAIMS:*

The Debtor, at its option or upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount within 30 days before the confirmation date, and may substitute for the Debtor as the objecting party to any pending claim objections. Objections not filed by the confirmation date shall be deemed waived. If an objection is made,

payment to such claimants will be made only after the entry of a final order by the Court,

allowing such claim, and in accordance with, the provisions of the Plan governing such class to

which such claims belongs.

The claim of any creditor that has been scheduled as disputed, but who has not filed a

proof of claim, shall be disallowed by confirmation of the Plan.

## 5. OTHER PROVISIONS

### 5.1 *EXECUTORY CONTRACTS:*

Debtor assumes all unexpired leases and executory contracts to which it is a party and

which have not been expressly rejected pursuant to 11 U.S.C. Section 365(a).

### 5.2 *MEANS OF EXECUTION OF THE PLAN AND FUTURE MANAGEMENT OF DEBTOR:*

Upon confirmation of the plan, Debtor shall have sufficient funds to make all payments

then due under this Plan. The funds will be obtained from business' on-going operations of the

amusement park named Fun Valley Park located at Arecibo, Puerto Rico. A set of business

projections is included herein as **Exhibit 7**.

On the Consummation Date of the Plan, the operation of the named business and other

estate assets shall be and may become the general responsibility of the reorganized Debtor

("Reorganized Debtor"), which shall thereafter have the responsibility for the management,

control and administration.

As to future management, Debtor (Fun Valley Park) will continue business' operations

the same it has operated, prior and during the reorganization process. Actually, Mr. Rafael

Aviles does not receive any compensation for the work and services provided in the corporation.

## *5.3* PROVISIONS FOR THE MODIFICATION OF THE PLAN:

The Debtor may propose amendments or modifications of this Plan at any time prior to its

confirmation pursuant to 11 U.S.C. 1127. After confirmation of the Plan, the Reorganized

Debtor may, with the approval of the Court and as long as it does not adversely affect the

interests of the creditors, remedy any defect or omission, in such manner as may be necessary to

carry out the purposes and effects of the same.

## *5.4* CLOSING OF THE CASE:

At such time as the case has been substantially consummated, this case shall be closed.

In order for the case to be closed, Debtor shall file an application for final decree showing that

the case has been fully administered and the Plan has been substantially consummated. The

Court may conduct a hearing upon application thereof and after notice to all creditors and parties

in interests. Thereafter, an order approving the Debtor's report and closing of the case shall be

entered.

## *5.5* *RETENTION OF JURISDICTION:*

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by

law, rule or statute, or by this Plan, to enable the Debtors to consummate any and all proceedings

which they may bring before or after the entry of the confirmation order, in order to carry out the

provisions of this Plan.

This is the Disclosure Statement and Plan of Reorganization hereby proposed to creditors and parties in interest, filed with the Honorable Bankruptcy Court on this same date. Parties are encouraged to review these documents in order to formulate an informed decision on debtor's whereabouts and conditions. A hearing to consider the approval of this Disclosure Statement will be scheduled by the Honorable Court, with Notice of said hearing served to all parties as per the master address list.

Fun Valley Park Inc.
Case No. 10-08563 (BKT)
Disclosure Statement

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, this 24 day of May of 2011.

**RAFAEL AVILES CORDERO**
President of Fun Valley Park Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY:** That on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants appearing in said record.

**I HEREBY CERTIFY**: That on this same date, a true and correct copy of the foregoing Disclosure Statement and Plan of Reorganization, has been hand delivered to the United States Trustee, and mailed by first class service to those parties that, in writing, have requested copy of said document, as ordered by the Court.

**/S/ WIGBERTO LUGO-MENDER**
**WIGBERTO LUGO-MENDER**
**ATTORNEY FOR DEBTOR**
USDC-PR 212304
CENTRO INTERNACIONAL
DE MERCADEO
Road 165 Tower I Suite 501
Guaynabo, PR 00968
Tel. (787) 707-0404
Fax (787) 707-0412

wlugo@lugomender.com

# INDEX TO EXHIBITS

| Exhibit Number | Description |
| --- | --- |
| 1. | Summary of Monthly Operating |
| 2. | Corporate Tax Returns for the year ended on December 31, 2009 and 2010 and unaudited financial statements for the three months ended March 31, 2011. |
| 3. | Detailed Liquidation Analysis |
| 4. | Schedule of Payments Under The Plan of Reorganization |
| 5. | Loan Calculator with Banco de Desarollo para PR |
| 6. | Loan Calculator with US Small Business |
| 7. | Business Projections |